[No. 43028.    En Banc.    April 4, 1974.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Respondent*,
v. STANLEY NOVAK *et al., Appellants.*

*McGavick & Felker*, by *Robert S. Felker*, for appellants.

*F. Ross Burgess* and *Lycette, Diamond & Sylvester*, by *Edwin J. Snook*, for respondent.

*Jack J. Ackerman*, amicus curiae.

HUNTER, J.—This case involves a complaint for declaratory judgment filed by the plaintiff (respondent), Hartford Accident Indemnity Company, against the defendants (appellants), Stanley and Jane Doe Novak, concerning the coverage and rights of the defendants under an "uninsured motorist" portion of an insurance policy with the plaintiff.

The defendants appeal from an order by the trial court granting the plaintiff's motion for summary judgment.

On December 11, 1970, the defendants were involved in an automobile accident with a second vehicle, which struck the defendants' vehicle as the second vehicle swerved to avoid colliding with another third vehicle, which had unexpectedly pulled out into the lane of traffic. At the time of the accident the third vehicle failed to make any "physical contact" with either the second vehicle or the defendants' vehicle, but rather fled the scene without leaving any means of identification available to anyone involved.

The accident was immediately investigated by the Washington State Patrol. The drivers and witnesses in both the defendants' vehicle and the second vehicle maintained without question that the accident was the unavoidable result of the actions of an unknown and unidentifiable vehicle which had fled the scene without a scratch. No accident report was ever filed by the fleeing driver, and neither the plaintiff, which insures the defendants, nor the insurer for the second vehicle, had received any correspondence from any insurance company regarding the role of the third vehicle in this accident.

As a result of the accident, the defendants allegedly received certain injuries asserted to have been proximately caused by the operation of the hit-and-run vehicle, and filed a demand with the American Arbitration Association on August 16, 1972, for the matter to be arbitrated. The section of the insurance policy upon which the defendants relied in asserting a right to arbitrate provides as follows:

6. Arbitration: If any person making claim hereunder and the company *do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Section,* then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon

the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Section.

(Italics ours.)

Subsequent to the filing of the defendants' demand for arbitration, the plaintiff filed a complaint for declaratory judgment in the Superior Court for Pierce County, seeking a judgment declaring that no coverage was available under the "uninsured motorist" provisions of their policy for the defendants and that the plaintiff should not have to arbitrate the matter. Section 3, subdivision 2 of the insurance contract, defines "uninsured automobile" as follows:

(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or

(b) a hit-and-run automobile;

The insurance policy further defines a "hit-and-run automobile" as follows:

an automobile which causes bodily injury to an insured *arising out of physical contact of such automobile with the insured* or with an automobile which the insured is occupying at the time of the accident  .   .   .

(Italics ours.)

After considering the language of the sections of the insurance policy referring to arbitration and uninsured motorist coverage, the trial judge, upon motion by the plaintiff, entered an order staying the arbitration proceedings. Subsequently, on February 20, 1973, the trial judge entered an order granting the plaintiff's motion for summary judgment, holding: (1) that the plaintiff had no coverage under

the insurance policy for the defendants as a result of the accident; and (2) that the plaintiff need not arbitrate the matter in question with the defendants through the American Arbitration Association. Thereafter, the defendants took this appeal.

The primary issue in this case is whether the defendants would be covered under the uninsured motorist provision of their insurance policy, should it be determined that the injuries or damages sustained by the defendants were proximately caused by a hit-and-run vehicle, which failed to make physical contact with the vehicle of the insured.

This issue was first considered by this court under a different factual situation in *Johnson v. State Farm Mut. Auto. Ins. Co.*, 70 Wn.2d 587, 424 P.2d 648 (1967). In that case the same limiting language was in the policy requiring physical contact by the hit-and-run vehicle with the vehicle of the insured to afford coverage. Under the facts, however, the hit-and-run vehicle did not collide with the car of the insured, but struck a second car that was propelled into the vehicle of the insured.

We considered the diverse views on the issue of whether physical contact was required under decisions in the states of New York and California, and stated on page 589:

> Where an unknown vehicle has struck a second vehicle and caused it to strike the insured vehicle, there is "physical contact" between the unknown vehicle and the insured vehicle within the meaning of the clause quoted above.

On pages 590-91, we then stated the purpose of the uninsured motorist clause, the basis for the physical contact requirement, and the extent to which it should be applied:

> Such provisions are intended to protect the insured against losses occasioned under circumstances where recovery cannot be had against the party causing the injury. Those circumstances are:
> (1) where the offending party is uninsured; and
> (2) where the identity of the offending party cannot be ascertained.
> Loss occurs, and for the same reasons, whether the

contact between the hit-and-run automobile and the insured's vehicle be "physical" or "actual."

In *Inter-Insurance Exchange of the Auto. Club of Southern Cal. v. Lopez,* 238 Cal. App. 2d 441, 47 Cal. Rptr. 834 (1965), the court, in interpreting the pertinent provisions of the California Insurance Code, noted at 446:

> The requirements of physical contact . . . are intended to prevent frauds, not to lessen the coverage extended to innocent motorists. *We believe the physical contact requirement, designed to prevent false claims, should not be extended to defeat recovery in cases where fraud clearly does not exist.*

(Italics ours.)

Subsequent to the above decision, in the following year our legislature, apparently having in mind our enunciations in *Johnson,* enacted the uninsured motorist act. RCW 48.22.030 provides as follows:

> On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in RCW 46.29.490, for the *protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured may be given the right to reject such coverage, and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

(Italics ours.)

It is significant in the above statute that the legislature omitted the limitation of "physical contact" by hit-and-run motor vehicles.

In *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972), we stated in clear and concise language the purpose of the above enactment:

The statute (RCW 48.22.030) requiring that uninsured motorist coverage shall be provided . . . is but one of many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver. It was enacted to expand insurance protection for the public in using the public streets, highways and walkways and at the same time cut down the incidence and consequences of risk from the careless and insolvent drivers. The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

We there further stated on pages 332-33:

There is no longer any judicial doubt that the state may regulate insurance, so closely is that industry affected with the public interest (43 Am. Jur. 2d *Insurance* § 60 (1969)), and regulatory statutes become a part of the policy of insurance. . . .

Thus, a valid statute becomes a part of and should be read into the insurance policy. . . . Read into the insurance contract as a public policy designed to expand uninsured motorist coverage to a significantly greater proportion of the population, the statute should receive from the courts a construction that will effectuate its manifest purpose. This principle, variously stated in other jurisdictions, was so declared in *First Nat'l Ins. Co. of America v. Devine*, 211 So. 2d 587, 589 (Fla. App. 1968):

(Citations omitted.) We cited therefrom the following key and controlling language:

The position taken by courts of this State, and by

courts of other States, makes it clear that *restriction* upon the coverage provided by uninsured motorists provisions of automobile insurance policies is against public policy and is void.

(Italics ours.)

█ We believe it is apparent that the legislature, by its enactment of RCW 48.22.030, intended to afford protection to an insured for injuries or damages proximately caused by a hit-and-run vehicle, irrespective of its actual physical contact with the vehicle of the insured. The plaintiff insurance company in this case was bound to follow the mandate of our statute, and the limiting language in the policy to the contrary, requiring physical contact by the hit-and-run vehicle to afford the defendants coverage, is void and contrary to the public policy of this state. We therefore hold that the defendants, under their insurance policy with the plaintiff, were covered for injuries and damages which may have resulted from the operation of the hit-and-run vehicle.

The plaintiff has cited various cases in support of its contention that "physical contact" is required to afford uninsured motorist coverage in the case of injuries or damages sustained from a hit-and-run vehicle. We find in those cases so holding that in most instances the statute of that state, requiring uninsured motorist coverage, also contains the "physical contact" limitation in the case of injuries or damages caused by a hit-and-run vehicle. As to other cases cited, holding contrary to our views expressed herein, we are not inclined to follow. We believe the Florida court in *Brown v. Progressive Mut. Ins. Co.*, 249 So. 2d 429 (Fla. 1971), contains the better reasoning and the more enlightened view consistent with the philosophy of our previous decisions, which we adopt. In that case the insured sustained injuries and damages from a hit-and-run vehicle which was not known to have made "physical contact" with the vehicle of the insured as required for coverage by the policy. The statute in the state of Florida, directing uninsured motorist coverage, was similar to our statute and

contained no "physical contact" provision in order to afford recovery for injuries caused by an unidentified vehicle. That court stated on page 430:

The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others. The effect of the District Court of Appeal decision here for review is to place on the injured person in every case the burden of proving that the offending party was without insurance regardless of the circumstances, the equities or the difficulties. Failure on the part of the injured party to make such proof results in nonrecovery, and the certainty that in some cases at least, injured persons then become the burden of society or of the state, despite their attempt to protect themselves by purchase of insurance intended to shield them against damages inflicted by a party from whom recovery cannot be made in person or through his insurance.

In deciding whether a person is entitled to the protection of Fla.Stat. § 627.0851, F.S.A., the question to be answered is whether the offending motorist has insurance available for the protection of the injured party, for whose benefit the statute was written; the test should not be simply whether or not the injured party can prove the offending party was uninsured, which is, in many instances, impossible in hit-and-run cases. Any other construction of the statute is unfair and unduly restricts the application intended by the Legislature.

*The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review.*

(Italics ours.)

We also agree with the reasoning of the Arizona Court of Appeals in *Mazon v. Farmers Ins. Exch.*, 13 Ariz. App. 298, 475 P.2d 957 (1971). (Arizona also has an uninsured motorist statute similar to our state statute, which does not require physical contact for injuries caused by an unidentified vehicle, to come within the uninsured motorist coverage.) That court stated on pages 300-301:

In the instant case, plaintiff has challenged the "physical contact" requirement as it was enumerated in *Lawrence, supra* [8 Ariz. App. 155, 444 P.2d 446 (1968)], as being violative of the statutory provision which makes no mention of "physical contact." [Arizona uninsured motorist statute]

The "physical contact" requirement found in policies today is primarily designed to prevent fraudulent claims. In that regard, it is similar to tort rules on damages for mental anguish which require, in addition, some physical injury. In both cases, the physical contact goes to assuring the reliability of the claim. *See,* Annot., 25 A.L.R.3d 1299.

However, the difficulty with using a secondary standard as a means to screen out unreliable claims is that the second test can become a requirement by itself without regard to its original intent. Thus, as in the instant area, in cases even where there was clear evidence of hit and run injuries, insurance companies persuaded some courts to require an actual physical contact also. In some cases this has developed into a rigid rule, unjustifiable in terms of its original intent. A. Widiss, A Guide to Uninsured Motorist Coverage (1969). In reaction to these cases, a California court has adopted a less strict interpretation of the policy requirement, looking to see if the actual proximate cause of the injury is a hit and run vehicle. Inter-Insurance Exchange of Automobile Club of Southern California v. Lopez, 238 Cal.App.2d 441, 47 Cal. Rptr. 834 (1965). Several other jurisdictions have followed. Motor Vehicle Accident Indemnification Corporation v. Eisenberg, 18 N.Y.2d 1, 271 N.Y.S.2d 641, 218 N.E.2d 524 (1966); Johnson v. State Farm Mutual Automobile Insurance Company, 70 Wash.2d 587, 424 P.2d 648 (1967).

We believe that this broader reading of the policy language fits best within the coverage sought under the Arizona statute. However, that is not to detract from the

plaintiff's being obligated to prove that a valid injury arose due to the operation of a "hit and run" vehicle. The company has an opportunity to show fraud.[1]

The plaintiff further argues that the literal meaning of the term "hit-and-run" in RCW 48.22.030 requires a hitting or physical contact of some sort in order for uninsured motorist protection to be afforded an insured, and cites cases to support this contention. *Ely v. State Farm Mut. Auto. Ins. Co.*, 268 N.E.2d 316 (Ind. App. 1971), and *Prosk v. Allstate Ins. Co.*, 82 Ill. App. 2d 457, 226 N.E.2d 498 (1967). We disagree with this contention and the reasoning of those cases. The phrase "hit-and-run" cannot be considered in isolation; it must be considered in context with the totality and purpose of the enactment. To give the term "hit-and-run vehicle" its literal meaning as suggested by the plaintiff would be inconsistent with the broad public policy grounds and purpose set forth in *Touchette*, of affording protection to the public from the inability to recover compensation for injuries and damages caused by the users of the highway. Injuries sustained as a result of the actions of an unidentified driver who flees from the scene of an accident without a scratch are just as real and severe as those caused by an unidentified driver of a car who runs from the accident where physical contact is involved. Moreover, the use of the term "hit-and-run" in this state, as well as in most other jurisdictions, is synonymous with a car involved in an accident causing damages where the driver flees from the scene. The requirement of physical contact is not to provide meaning to the term "hit-and-run," but rather is for the purpose of preventing the possible filing of fraudulent claims, as heretofore discussed in this opinion. If the literal meaning is given to the term "hit-and-run," then the requirement for physical contact provisions would be superfluous.

[1]This case was later vacated by the Arizona Supreme Court, *Mazon v. Farmers Ins. Exch.*, 107 Ariz. 601, 491 P.2d 455 (1972), specifically on grounds other than the failure of physical contact by the offending vehicle, which does not affect the impact of the above reasoning.

The defendants have raised the issue as to whether this entire case should be submitted to arbitration as indicated in the policy. The answer to this question is contained in a lengthy annotation in 29 A.L.R.3d 328, § 7, at 346 (1970). The authorities are uniform that the question of coverage is not an issue for arbitration, and we so hold. However, the authorities are equally clear that the issue of liability and injuries and damages sustained are properly matters for arbitration where the policy so provides.

In summary, the judgment of the trial court is reversed. The defendants are covered under the uninsured motorist provision of their policy. The case is remanded to the trial court with direction that the parties be afforded arbitration under the terms of the policy on the issue of liability, and for injuries and damages sustained by the defendants by reason of the asserted negligent operation of the hit-and-run vehicle. It is so ordered.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.