PIN PIN H. SU

v.

**KEMPER INSURANCE COMPANIES/ AMERICAN MOTORISTS INSURANCE COMPANY.**

No. 80–263–Appeal.

Supreme Court of Rhode Island.

July 2, 1981.

---

Resmini, Fornaro, Colagiovanni & Angell, Ronald J. Resmini, Providence, for plaintiff.

Boyer, Reynolds & DeMarco, John G. Rallis, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court rendered pursuant to a complaint for declaratory relief filed by Pin Pin H. Su (plaintiff) against Kemper Insurance Companies/American Motorists Insurance Company (Kemper) in respect to uninsured-motor-ist coverage of an automobile liability insurance contract. The policy was issued to the husband of the plaintiff and concededly covers her within its benefits. The agreed statement of facts submitted by the parties discloses the following.

On December 27, 1978, plaintiff was involved in an automobile accident in which she sustained personal injuries. While plaintiff was operating a motor vehicle on Pawtucket Avenue in East Providence in the exercise of due care, a vehicle entered her lane of travel, causing her to take evasive action to avoid a collision and ultimately to strike a telephone pole. The operator of the other vehicle was and remains unidentified. On these agreed facts, the trial justice issued a declaratory judgment holding that the absence of physical contact between plaintiff's vehicle and the unidentified motorist's vehicle precluded recovery under the terms of the policy. As a consequence, arbitration under the policy was enjoined. We reverse.

Under the terms of the policy of insurance an uninsured motor vehicle was defined as follows:

> " '*Uninsured motor vehicle*' means a land motor vehicle or trailer of any type:
>
> " * * *
>
> "3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
>
> a. You or any *family member*;
> * * *."

Thus, the specific terms of the policy require physical contact between the insured person or vehicle and the unidentified vehicle in order to establish coverage for injuries. This policy was issued pursuant to the provisions of G.L. 1956 (1979 Reenactment) § 27–7–2.1, which reads in pertinent part as follows:

> "No policy * * * shall be delivered or issued for delivery in this state * * * unless coverage is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of proper-

ty damage, bodily injury, sickness or disease, including death, resulting therefrom * * * ."

It should be noted that the language of the statute does not require that there be physical contact between the vehicle of an uninsured motorist and the vehicle of the insured. However, Kemper contends that inherent within the term "hit and run" is the requirement of physical contact. Without question, a number of courts have so held.[1] The states may be divided into three groups in terms of statutory coverage: (1) in some states physical contact is specifically required by statutes;[2] (2) a second group of states have statutes that reject contact as a requirement;[3] and (3) a third group of states provide protection in their statutes for the insured against hit-and-run drivers but do not specifically require or forbid actual physical contact as a condition precedent to coverage for loss or injury. It is this third category in which litigation has been most intense and in which the great split of authority may be found. *See* Widiss, *A Guide to Uninsured Motorist Coverage* § 2.41 (1969 & 1980 Supp.). In recent years an increasing number of courts whose statutes are similar in terms to that of Rhode Island have rejected the physical-contact requirement and have declared contractual clauses to the contrary to be void as against public policy. *Montoya v. Dairyland Insurance Co.,* 394 F.Supp. 1337 (D.N.M.1975); *State Farm Fire and Casualty Co. v. Lambert,* 291 Ala. 645, 285 So.2d 917 (1973); *Farmers Insurance Exchange v. McDermott,* 34 Colo.App. 305, 527 P.2d 918 (1974); *State Farm Mutual Automobile Insurance Co. v. Abramowicz,* 386 A.2d 670 (Del.1978); *Brown v. Progressive Mutual Insurance Co.,* 249 So.2d 429 (Fla.1971); *De-Mello v. First Insurance Co. of Hawaii, Ltd.,*

55 Haw. 519, 523 P.2d 304 (1974); *Halseth v. State Farm Mutual Automobile Insurance Co.,* 268 N.W.2d 730 (Minn.1978); *Soule v. Stuyvesant Insurance Co.,* 116 N.H. 595, 364 A.2d 883 (1976); *Biggs v. State Farm Mutual Automobile Insurance Co.,* 569 P.2d 430 (Okl.1977); *Hartford Accident and Indemnity Co. v. Novak,* 83 Wash.2d 576, 520 P.2d 1368 (1974).

In one of the earlier cases that rejected the physical-contact requirement, Justice Adkins of the Supreme Court of Florida observed:

"The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review." *Brown v. Progressive Mutual Insurance Co.,* 249 So.2d at 430.

The Supreme Court of Washington, in commenting upon the argument that the term "hit and run" requires a hitting or physical contact of some sort, noted:

"We disagree with this contention and the reasoning of * * * cases [which so hold]. The phrase 'hit-and-run' cannot be considered in isolation; it must be considered in context with the totality and purpose of the enactment. To give the

---

1. *See, e. g., United States v. Commercial Union Ins. Group,* 294 F.Supp. 768 (S.D.N.Y.1969); *Balestrieri v. Hartford Accident & Indem. Co.,* 112 Ariz. 160, 540 P.2d 126 (1975); *Rosnick v. Aetna Cas. & Sur. Co.,* 172 Conn. 416, 374 A.2d 1076 (1977); *Finch v. Central Nat'l Ins. Group of Omaha,* 59 Ill.2d 123, 319 N.E.2d 468 (1974); *Government Employees Ins. Co. v. Goldschlager,* 44 App.Div.2d 715, 355 N.Y.S.2d 9 (1974).

2. *See, e. g.,* Cal.Ins.Code § 11580.2(b)(1) (West 1972); Ga.Code Ann. § 56–407.1(b)(2) (1977); Miss.Code Ann. § 83–11–103 (1972); N.Y. Ins.Law § 617 (McKinney 1966); S.C.Code § 56–9–850(2) (1976).

3. *See, e. g.,* Or.Rev.Stat. § 743.792 (1953); *see also Pasterchick v. Insurance Co. of North America,* 150 N.J.Super. 90, 374 A.2d 1243 (App.Div.1977) (interpreting N.J.Stat.Ann. § 17:28–1.1 (West 1970)).

**419**

term 'hit-and-run-vehicle' its literal meaning as suggested by the [insurer] would be inconsistent with the broad public policy grounds and purpose * * * of affording protection to the public from the inability to recover compensation for injuries and damages caused by the users of the highway. Injuries sustained as a result of the actions of an unidentified driver who flees from the scene of an accident without a scratch are just as real and severe as those caused by an unidentified driver of a car who runs from the accident where physical contact is involved. Moreover, the use of the term 'hit-and-run' in this state, as well as in most other jurisdictions, is synonymous with a car involved in an accident causing damages where the driver flees from the scene. The requirement of physical contact is not to provide meaning to the term 'hit-and-run,' but rather is for the purpose of preventing the possible filing of fraudulent claims * * *." *Hartford Accident and Indemnity Co. v. Novak*, 83 Wash.2d at 585, 520 P.2d at 1373–74. We are persuaded by the reasoning of the cases that have voided the requirement of physical contact as a condition precedent to policy coverage in unidentified-motorist cases.

In interpreting the language "hit and run," we believe, as did the Supreme Court of Washington, that the term is merely a shorthand colloquial expression that is designed to describe a motorist who has caused, or contributed by his negligence to, an accident and flees the scene without being identified. Thus, there is no inherent connotation that physical contact is an essential part of its definition. As a consequence, if there is to be support for the requirement of physical contact, it must be derived, not from the statutory language, but from a perceived need to limit or avoid fraudulent claims.

We do not believe that the talismanic value accorded to physical contact will significantly inhibit the fraudulent claimant. As was noted by the Supreme Court of Hawaii in *DeMello v. First Insurance Co. of Hawaii, Ltd.*, 55 Haw. 519, 523 P.2d 304 (1974),

"A claimant with a fraudulent claim can bolster the same, if necessary, by damaging his own car to leave apparent proof of the requisite 'physical contact' with a non-existing 'unidentified vehicle.' The contractual 'physical impact' requirement thus not only sweeps too broadly, but also not broadly enough, to accomplish its only justifiable and statutorily permissible purpose, the prevention of frauds." *Id.* at 529, 523 P.2d at 310.

Some years ago we stated in *Aldcroft v. Fidelity & Casualty Co.*, 106 R.I. 311, 259 A.2d 408 (1969), that the purpose of enacting the uninsured-motorist-coverage statute was to afford protection to the insured against "economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles." *Id.* at 318, 259 A.2d at 413. This is the same broad statutory purpose ascertained by courts which have rejected the physical-contact requirement. *See, e. g., Brown v. Progressive Mutual Insurance Co., supra; Hartford Accident and Indemnity Co. v. Novak, supra.* If one views the situation in the light of this statutory purpose, it seems wholly inappropriate to allow an insurance company to deny coverage on the sole ground of lack of physical contact when the claimant is able to prove by a fair preponderance of the evidence that his or her injuries resulted from the negligence of an unidentified motorist. We recognize the possibility of fraudulent claims but believe that the element of physical contact is not of significant relevance in the identification and resistance of such claims. The presence or absence of impartial witnesses, the credibility of the claimant's testimony, the ability of the cross-examiner to expose prevarication are all far more efficient tools of the adversary process to expose fraud in this context. Consequently, we are of the opinion that the policy requirement of physical contact is void as against the policy inherent in the uninsured-motorist statute.

In light of our disposition of this issue, it is unnecessary to consider other claims raised by plaintiff in respect to waiver of the issue of physical contact by proceeding to arbitration.

For the reasons stated, the appeal of the plaintiff is sustained. The judgment of the Superior Court is vacated and the papers in the case may be remanded to the Superior Court with direction to enter a judgment consistent with this opinion.

SHEA, J., did not participate.

KELLEHER, Justice, dissenting.

I realize that there is a diversity of judicial thought regarding the extent of coverage afforded by the hit-and-run provisions of the various uninsured-motorist statutes, but the issue to be resolved by this court is just what our Legislature, the General Assembly, did intend when in the spring of 1962 it enacted P.L. 1962, ch. 161, and thereby afforded an opportunity for the purchaser of automobile liability insurance to obtain compensation for losses caused by a specific group of tortfeasors, the uninsured and the hit-and-run motorist. It is my belief that when the legislators in 1962 opted for protection against the hit-and-run driver, they never imagined that some nineteen years later a judicial body would, with a bit of semantic legerdemain, change the term "hit and run" into "miss and run." Houdini would certainly appreciate such "sleight of eye," but the legislators, Class of 1962, who are still possessed of an ability to recall, will, I suggest, shake their heads in disbelief upon learning that when they said "hit" in 1962, they really meant "miss."

This court has repeatedly said that when the language of a statute is free from ambiguity and expresses a clear, sensible meaning, there is no room for statutory construction, and the court must give the words their plain and obvious meaning. "Hit and run" are words of common, everyday meaning. The word "hit" is defined in Webster's Third International Dictionary as "1 a: a blow striking an object aimed at—contrasted with *miss* * * * b: an impact of one thing against another: COLLISION."

It is interesting to note that when the Legislature approve the uninsured-motorist statute in 1962, the approval came from both branches on the sixtieth and last day of the January 1962 session. At that moment, the Boston Red Sox baseball team had just begun another one of the team's many fruitless pursuits of the American League championship. All of the Red Sox players and just about every legislator were highly aware at that time of the year that before one can have a successful execution of the hit-and-run play in baseball, the batter must hit the ball.

A pedestrian who is struck by an unidentified motor vehicle and then has the misfortune of seeing the automobile leave the scene will tell anyone who inquires about his or her physical welfare that he or she has been involved in a hit-and-run accident.

In The American Heritage Dictionary of the English Language (1978 ed.), the phrase "hit-and-run" is classified as an adjective which describes "the driver of a motor vehicle who drives on after striking a pedestrian or another vehicle"; or, when used in a baseball sense, describes "a play in which a man on base runs with with the pitch, and the batter attempts to hit the ball." It is obvious that my colleagues care little for our American heritage or the publication that bears that title.

With all due deference to my associates, the General Assembly knew exactly what it was doing when it first afforded protection against the uninsured and hit-and-run motorist. If the Legislature ever intended to include protection against the "miss-and-run" motorist, it was perfectly capable of saying so, but it did not. The majority has, under the guise of a liberal construction, amended a statute that, because of its clear, precise prose, needs no such amendment.