OPINION OF THE COURT
Thomas E. Mercure, J.
In an action to recover the proceeds of a fire insurance policy, defendant carrier moves for partial summary judgment dismissing the portion of the complaint seeking damages for the amount deducted from the claim for depreciation ($11,914.01) and for debris removal ($3,500).
The underlying facts are undisputed. Defendant issued plaintiff a fire insurance policy effective February 5,1982. On April 29, 1982, and while the policy was in full force and effect, the subject premises were totally destroyed by fire. Plaintiff chose -not to rebuild the destroyed premises, but, instead, elected to replace them with another building at another site. Defendant has not disputed and does not now dispute its obligation to pay in accordance with the provisions of the policy. The only disagreement between the parties is the amount the defendant is obligated to pay, the source of the disagreement being a differ *750 ence of opinion as to the correct interpretation of the policy provisions and the language contained therein.
It is plaintiff’s position that interpretation of an insurance policy is a factual issue which must be determined by the trier of fact and that, accordingly, the motion must be denied. I disagree. As a general rule, interpretation of insurance policies and other written agreements is the responsibility of the court. “If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury * * * On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court.” (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 172.) In this case, neither party has suggested that there is any extrinsic evidence which would have any bearing on or relevance to interpretation of the policy. To the contrary, both argue that the proper interpretation can be discerned from the policy itself.
The specific provisions of the policy which the court must interpret or which are argued to have bearing on a proper interpretation are as follows:

Section I-Conditions

“3. Loss Settlement. Covered property losses are settled as follows * * *
“c. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
“(1) If at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:
“(a) the limit of liability under this policy applying to the building;
“(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
“(c) the amount actually and necessarily spent to repair or replace the damaged building * * *
“(4) When the cost to repair or replace the damage is more than $1,000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more *751 than the actual cash value of the damage until actual repair or replacement is completed.”
“Guaranteed Replacement Cost and Inflation Protection Endorsement
“it is agreed that this policy is changed so that:
“A,. If a loss to the dwelling insured by this policy exceeds the Coverage A limit shown on the Declarations, the limit will be waived * * *
“B. The coverage A limit will not be waived when * * *
“2. The insured elects not to replace the damaged property. Replace means to rebuild or repair the damaged dwelling” (emphasis supplied).
Defendant determined plaintiff’s loss in accordance with the provisions of paragraph 3 (c) (1) (b), above, as follows: average replacement cost of $39,713.37 plus debris removal of $3,500 for a total replacement cost of $43,213.37, less the $100 deductible, less depreciation of $11,914.01, for a net settlement of $31,299.36, which sum was tendered to plaintiff. The deduction for depreciation was based on defendant’s interpretation of paragraph 3 (c) (4), above, as conditioning payment of full replacement cost, in accordance with the provisions of paragraph 3 (c) (1) (a), on replacement of the damaged building on the same premises. It is defendant’s position that use of the words “on the same premises” in paragraph 3 (c) (1) (b) and the definition of “replace” contained in rider HO-80-76, above, require an interpretation of paragraph 3 (c) (4) as requiring actual repair or replacement on the same premises even though the words “on the same premises” are absent from the latter. The court disagrees.
The court finds, first, that the language of paragraph 3 (c) (4) is ambiguous. It cannot tell from the policy whether replacement on the same premises is intended by this clause or, for that matter, what logical purpose is furthered by the clause itself. It is fundamental that any ambiguity in an insurance policy will be construed against the insurer and in favor of the insured, and this is particularly so when the ambiguity is found in an exclusionary clause (Breed v Insurance Co. of N. Am., 46 NY2d 351). There can be no question that the subject clause is an exclusionary clause, as it limits or conditions the insurer’s obligation to pay the replacement cost of the damage, without deduction for depreciation, provided for in paragraph 3 (c).
Nor does the court feel that the fact that provision for replacement on the same premises is found in two other clauses of the *752 policy mandates or even supports the conclusion that it was intended in the disputed clause. In fact, it would seem, quite to the contrary, that the specific inclusion of this requirement in two clauses of the policy begs a finding that its absence elsewhere was intentional. Further, the subject clause is not sufficiently similar to the other two so as to necessarily infer an intention that their provisions be the same. Paragraph 3 (c) (1) (b) is really nothing more than a hypothetical measuring device. In the case where the damaged building is not replaced, or where the sums actually expended for replacement are demonstrated to be in excess of the reasonable cost thereof, paragraph 3 (c) (1) (c) cannot, or should not, be utilized, and it is left to paragraph 3 (c) (1) (b) to determine the carrier’s liability, by means of estimate. In this case, it is highly logical to link the estimate to reality by providing that it is the cost of replacement of the destroyed building itself, on the original site, which will measure the carrier’s liability. If nothing more, this method will assure credit to the carrier for the value of any usable improvements still on the site, such as the foundation, well, septic system, and the like, and avoid the possibility of enhanced material and transportation costs at or to another site. In direct contrast, paragraph 3 (c) (4) is not hypothetical. It is real, and it affords the carrier an opportunity to avoid its obligation to pay an amount equal to the basic coverage provided for in the contract by permitting deduction for depreciation in a policy which by its terms pays full replacement cost without deduction for depreciation.
Rider HO-80-76 is an optional enhancement to the policy, apparently purchased by the plaintiff at additional cost. What it does, simply, is increase the available coverage of the basic policy under specified and limited circumstances. It is clearly distinguishable from paragraph 3 (c) (4) in that it expands rather than diminishes the basic coverage. Further, since it is an optional rider, it can safely be concluded that a great many policies identical to the subject policy have been issued by defendant without inclusion of this rider. To take the position that a definition contained within this optional rider of necessity affects the basic policy, is not at all logical, when said rider could have easily been left off the policy. There simply is no interrelationship between rider HO-80-76 and paragraph 3 (c) (4).
Inasmuch as it is undisputed that plaintiff did replace the damaged building on another site and paragraph 3 (c) (4) contains no requirement that replacement be made on the same site, partial summary judgment is hereby granted to plaintiff pursuant to CPLR 3212 (b), in the amount of $11,914.01. This, *753 combined with the $31,299.36 previously paid, brings the total allowance to plaintiff to $42,213.37, the total damage determined by defendant, including $3,500 for debris removal. Defendant’s motion for partial summary judgment is granted to the extent of dismissing the branch of plaintiff’s cause of action seeking recovery for debris removal. There is no question an allowance of $3,500 for debris removal is included in the above allowance.