[No. 60026-1. En Banc. September 2, 1993.]

TIMOTHY K. HESS, ET AL, *Respondents*, v. NORTH PACIFIC INSURANCE COMPANY, *Petitioner*.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell* and *Robert N. Gellatly,* for petitioner.

*Fred C. Pflanz, Beverly L. Anderson, Carl E. Hueber,* and *Winston & Cashatt,* for respondents.

*William R. Hickman* and *Sandra K. Pailca* on behalf of United Services Automobile Association, amicus curiae for petitioner.

*Sidney R. Snyder, Jr.,* and *Ronald S. Dinning* on behalf of PEMCO, Safeco, and Unigard Insurance Companies, amici curiae for petitioner.

*J. Tucker Miller* on behalf of Safeco Insurance Company, amicus curiae for petitioner.

*Mark S. Cole, Mark Edward Mills,* and *Thomas Lether* on behalf of Farmers Insurance Group and American States Insurance Company, amici curiae for petitioner.

BRACHTENBACH, J. — This case concerns the amount payable under the replacement clause of a homeowners insurance policy when the destroyed building is not repaired or replaced and the insured has no intent to repair or replace. This is the first occasion for this court to interpret such a replacement clause.

The facts are stipulated. Defendant, North Pacific Insurance Company, insured a summer cabin of plaintiffs Timothy K. and Georgianne H. Hess. The cabin was destroyed by fire. The agreed actual cash value was $20,000. The agreed replacement cost was $43,182.10. The insureds did not replace the cabin, nor do they intend to do so. Defendant paid the actual cash value to plaintiffs. Clerk's Papers, at 114-15. Plaintiffs sued for $23,182.10, the difference between the full replacement cost and the actual cash value.

The sole issue is whether, under the terms of the policy, the insureds can collect the full replacement cost when they have not replaced the destroyed insured cabin and stipulated they do not intend to replace it.

The trial court granted summary judgment for said $23,182.10 to the insured plaintiffs, plus prejudgment interest. The Court of Appeals affirmed. *Hess v. North Pac. Ins. Co.,* 67 Wn. App. 783, 841 P.2d 767 (1992), *review granted,* 121 Wn.2d 1008 (1993). We reverse, and thereby join the virtually unanimous holdings in other jurisdictions which have considered the same or similar replacement clauses.

Before analyzing the policy clauses, a brief history of replacement clauses is helpful. Historically, the underlying purpose of property insurance is indemnity. Traditional coverage was for the actual or fair cash value of the property. The owner was indemnified fully by payment of the

fair cash value, in effect the market value, which is what the owner lost if the insured building was destroyed. 6 J. & J. Appleman, *Insurance* § 3823 (1972).

However, it was recognized that an owner might not be made whole because of the increased cost to repair or to rebuild. Thus, replacement cost coverage became available. "Replacement cost coverages . . . go beyond the concept of indemnity and simply recognize that even expected deterioration of property is a risk which may be insured against." Jordan, *What Price Rebuilding?*, 19 The Brief 17 (Spring 1990) (cited hereafter as the Jordan report).

A Washington statute prohibits "overinsurance", *i.e.*, insurance in excess of the "fair value" (defined as cost of replacement *less* depreciation), RCW 48.27.010. However, replacement insurance is authorized specifically by RCW 48.27.020:

> [T]he insurer may in connection with a special provision or endorsement made a part of the policy insure the cost of repair or replacement of such property, if damaged or destroyed by a hazard insured against, and without deduction of depreciation . . ..

In this case, the relevant provisions of plaintiffs' policy are as follows:

> 3. *Loss Settlement.* Covered property losses are settled as follows:
> a. (1)-(3) [relate to property not involved here].
> b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
> (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
> (a) the limit of liability under this policy that applies to the building;
> (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or
> (c) the necessary amount actually spent to repair or replace the damaged building.

[Subparagraphs (2) and (3) relate to determination of the 80 percent of full replacement coverage and are not relevant here.]

(4) We will pay no more than the actual cash value of the damage unless:
(a) actual repair or replacement is complete; or
(b) the cost to repair or replace the damage is both:
(i) less than 5% of the amount of insurance in this policy on the building; and
(ii) less than $1000.
(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

Clerk's Papers, at 59-60.

█ A careful examination of these clauses, read together and in context as we must do, does not reveal any ambiguity. Stated generally, subparagraphs 3.b.(1)(a), (b), and (c) set the limits of maximum liability, i.e., the lesser of (a) or (b) or (c). Those amounts reflect (a) the policy limits, (b) the replacement cost of like construction and use on the same premises, more fully explained hereafter, or (c) the amount actually spent to repair or replace the damaged building.

The Jordan report, cited above, cogently explains:

The first measure, of course, limits the amount available for replacement to policy limits, while the second relates to a theoretical or hypothetical measure of loss: that is, the replacement cost of rebuilding the identical structure as one limit of the company's liability. This particular limitation does not require repair or replacement of an identical building on the same premises, but places that rebuilding amount as one of the measures of damage to apply in calculating liability under the replacement cost coverage. The effect of this limitation comes into play when the insured desires to rebuild either a different structure or on different premises. In those instances, the company's liability is not to exceed what it would have cost to replace an identical structure to the one lost on the same premises. Although liability is limited to rebuilding costs on the same site, the insured may then take that amount and build a structure on another site, or use the proceeds to buy an existing structure as the replacement, but paying any additional amount from his or her own funds.

Finally, the third limitation of liability strengthens the requirement that liability of the company does not exist until repair or replacement is made. The purpose of this limitation is to limit recovery to the amount the insured spent on repair or replacement as yet another measure of the loss liability of the insurer. This third valuation method is intended to disallow an insured from recovering, in replacement cost proceeds, any amount other than that actually expended.

(Footnotes omitted.) *Jordan*, at 19-20.

The Court of Appeals somehow concluded that the insurer's interpretation, *i.e.*, pay actual cash value unless replaced or repaired, "clearly implies that an insured who elects not to rebuild is entitled to no settlement at all." *Hess v. North Pac. Ins. Co.*, 67 Wn. App. 783, 787, 841 P.2d 767 (1992), *review granted*, 121 Wn.2d 1008 (1993). The Court of Appeals found that to be an ambiguity when related to subparagraph 3.b.(4): "We will pay no more than the actual cash value of the damage unless: (a) actual repair or replacement is complete". *Hess*, at 787.

It appears quite clear that despite the measures of possible liability set forth in 3.b.(1)(a), (b), and (c), subparagraph (4)(a) conditions payment of any one of those amounts upon *completion of "actual repair or replacement"*. (Italics ours.) The insurer has never contended that it does not owe, at a minimum, the actual cash value of the destroyed insured building, and, indeed, promptly paid that amount after the parties agreed that such in fact was the actual cash value.

The insurer well answers the Court of Appeals reasoning in this manner:

Paragraph 3.b.(1) deals with alternative measurers of *replacement cost*. When an insured does not replace, the least of the three alternative measures of loss (amount actually spent) is zero. Thus, the insured is not entitled to *replacement cost*. He is, however, entitled to actual cash value under paragraph 3.b.(4).

Supplemental Brief of Appellant, at 3-4.

The *Jordan* report summarizes the purpose of this clause:

This requirement for actual repair or replacement by the insured does not affect the company's liability to pay for actual cash value loss, but only for the difference between that figure

and the higher replacement cost. The purpose of that limitation, obviously, is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss, thus forcing the insured to rebuild in order to recover amounts withheld as depreciation.

Jordan, at 19.

The Court of Appeals seemed to find some ambiguity because the policy does not define "replacement cost" or "actual cash value". However, the policy does provide an appraisal method if the parties do not agree on the amount of the loss (Clerk's Papers, at 60). In any event, the issue seems irrelevant here because the parties stipulated to both the replacement cost and actual cash value.

 We turn to general principles of interpretation of insurance policies.

> The interpretation of insurance policies is a question of law. In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists.

(Citations omitted.) *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). That opinion goes on to summarize the applicable rules of interpretation if the provisions of a policy are ambiguous. *Transcontinental*, at 456-57. Complexity or the necessity to interrelate policy provisions does not alone render a policy ambiguous. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992).

 Applying the quoted provisions of *Transcontinental*, we must give effect to subparagraph 3.b.(4): *"We will pay no more than the actual cash value of the damage unless: (a) actual repair or replacement is complete"*. (Italics ours.) Clerk's Papers, at 60. When the definitions of the limits of liability which immediately precede the clearly stated condition and limitation of 3.b.(4) are read together and each clause given meaning, it is evident that only the actual cash value is owed unless actual repair or replacement is under-

taken and completed. It should be noted that paragraph 3.b., which refers to replacement cost, contains the phrase "subject *to the following*". One of the *following* subparagraphs is 3.b.(4). In other words, the very paragraph upon which the insureds rely makes itself subject to the limitation of 3.b.(4).

The following subparagraph, 3.b.(5), buttresses this conclusion by providing the insured "may disregard the replacement cost loss settlement provisions and make claim . . . for loss or damage to buildings on an actual cash value basis." Clerk's Papers, at 60. Obviously, rebuilding or replacement recovery remains an option for the insured because that subparagraph goes on to provide: "You may then make claim within 180 days after loss for any additional liability on a replacement cost basis." Clerk's Papers, at 60. This optional method of loss settlement would be superfluous if an insured were entitled to replacement cost without making the replacement.

Our holding is consistent with the holdings of other courts. In a recent annotation, the rule is summarized: "Generally, actual replacement of damaged or destroyed property has been held to be a prerequisite to collection of proceeds under a replacement cost endorsement of an insurance policy . . .." Annot., *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property*, 1 A.L.R.5th 817, 829 (1992). The annotation cites only two cases to the contrary which will be discussed later.

A recognized text makes the following comment: "Certainly, considering the purpose of [the replacement cost provisions], it is reasonable to deny recovery for replacement costs where the insured is not going to replace the property as he would then make a profit out of his loss . . .." 6 J. & J. Appleman, *Insurance* § 3823 n.66.57 (Supp. 1992).

The cases reach the same result. In *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147 (Ala. 1983), the relevant policy clauses were virtually identical to those in this case, includ-

ing a provision that "we will pay no more than the actual cash value of the damage until actual repair or replacement is completed." *Huggins*, at 149. The court stated:

Provisions like those contained in subparagraph c.(4) [quoted immediately above] have been interpreted as providing a condition precedent to an insurer's duty to pay repair or replacement costs of an insured building. A party who has not repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy and so cannot recover. See *Kolls v. Aetna Casualty & Surety Co.*, 503 F.2d 569 (8th Cir.1974); *Bourazak v. North River Insurance Company*, 379 F.2d 530 (7th Cir.1967).

*Huggins*, at 150. *Accord, Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 1 A.L.R.5th 1167 (Ala. 1990).

The replacement cost clause in *Paluszek v. Safeco Ins. Co. of Am.*, 164 Ill. App. 3d 511, 515-16, 517 N.E.2d 565 (1987) contained this language: " '[T]his company shall not be liable for more than the actual cash value of the damaged property unless and until actual repair or replacement is completed.' " The court held:

Unless and until an actual loss is sustained and proved by the insured, he is not entitled to reimbursement by the insurer.

In the present case, defendant paid plaintiff the actual cash value of her house . . .. Under the terms of the policy, this was all defendant was obligated to pay unless and until repairs were completed.

*Paluszek*, at 516.

*Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064 (W.D. Ky. 1987) is in point. The three amounts of possible recovery were essentially identical to those in this case. A following paragraph provided: "We will pay the cash value of the damage, up to the policy limit, until actual repair or replacement is completed." *Snellen*, at 1066. The insured did not replace the home and evidenced no intent to do so, but she claimed the policy was ambiguous so she should recover the replacement cost. The court held:

The policy in question is not ambiguous with respect to the insurer's obligation to pay replacement cost. Actual replacement, and the incurrence of costs in that endeavor, is clearly a condition precedent to such a claim.

. . . .
To hold otherwise in this case would necessitate ignoring the plain terms of the policy. It would also be contrary to the obvious provisions of the loss settlement clause taken as a whole, and would result in enlarging the coverage of the policy beyond its natural and obvious meaning.

(Citations omitted.) *Snellen*, at 1067.

The policy in *Higgins v. Insurance Co. of North Am.*, 256 Or. 151, 469 P.2d 766, 66 A.L.R.3d 871 (1970) did not contain a specific limitation, as in this case, *i.e.*, that the company would only pay the actual cash value until repair or replacement was completed. However, after carefully tracing the history and purpose of replacement coverage, the court held:

We conclude that since plaintiffs have not expended anything in repairing or replacing the insured building they are not eligible to recover under the "Replacement Cost" extension of the policy. For a similar conclusion see *Bourazak v. North River Insurance Company*, 379 F2d 530 (7th Cir. 1967).

(Footnote omitted.) *Higgins*, at 166-67.

Plaintiffs-insureds dismiss this very substantial line of authorities with the unhelpful statement that "[t]he cases from other jurisdictions have no bearing on the interpretation of this ambiguous policy." Brief of Respondent, at 9.

The annotation cited above cites only two cases in the United States which purportedly hold replacement is not a prerequisite to collection of replacement proceeds. Those two cases are *Reese v. Northern Ins. Co.*, 207 Pa. Super. 19, 215 A.2d 266 (1965) and *National Fire Ins. Co. v. Solomon*, 96 Wn.2d 763, 638 P.2d 1259 (1982). Because of a broad statement by Justice Dore in *National Fire Ins. Co. v. Solomon, supra*, examination of that opinion is necessary. That statement is:

The replacement cost method of payment does not require the rebuilding of the structure as a condition precedent to the payment of the proceeds under such policy. We rely on the rationale of *Reese v. Northern Ins. Co. of N.Y.*, 207 Pa. Super. Ct. 19, 22, 215 A.2d 266 (1965).

*Solomon*, at 770.

Before examining the policy in *Solomon* to determine its relevance here, it is necessary to reevaluate the reliance on *Reese*, the Pennsylvania Superior Court case which is the only authority cited by Justice Dore as author of the *Solomon* opinion. *Reese* has been cited by only one other court, outside of Pennsylvania. In that case, *Higgins v. Insurance Co. of North Am.*, *supra*, the Oregon Supreme Court, in reaching a contrary holding, simply said: "We think [*Reese*] . . . was wrongly decided . . .." *Higgins*, at 167 n.5. In the 28 years since *Reese* was decided, it has never been cited by the Pennsylvania Supreme Court. It has been cited only three times in superior court cases and only in passing. In one of those cases the trial court had held that the insurance policy provision providing for payment of only the cash value until replacement was completed was consistent with Pennsylvania statutes and judicial interpretations. Obviously such holding is directly contrary to *Reese*. On appeal, the Superior Court held only that the trial court ruling was but a partial and interlocutory resolution of the issues, and thus not appealable. *Canulli v. Allstate Ins. Co.*, 315 Pa. Super. 460, 462 A.2d 286 (1983). In another case, *Reese* was cited solely for the definition of "replacement costs". *Ditch v. Yorktowne Mut. Ins. Co.*, 343 Pa. Super. 22, 493 A.2d 782 (1985). In the third case, *Reese* was cited solely for the general rule of construction that ambiguous policy language is to be construed against the insurer and in favor of the insured and coverage. *Slate Constr. Co. v. Bituminous Cas. Corp.*, 228 Pa. Super. 1, 5, 323 A.2d 141 (1974).

Careful reading of the *Reese* opinion reveals it does not support the broad rule for which it is cited in *Solomon*. The policy in *Reese* contained the same three measures of loss as in this case, but *there was no clause* providing for the payment of cash value only until repair or replacement was completed. Even though the company had paid the cash value, it argued that since the insured had not repaired or rebuilt the lesser amount under the replacement clause was zero. The court noted that under such interpretation, carried to its logical conclusion, the insured would not even be

entitled to the cash value, already paid. The court distinguished a New Jersey case where the policy required actual replacement before there was any sum due. Significantly, the court said:

> That clause [in the New Jersey case] expressly requires the insured to replace and [then] he is entitled to recover replacement value. *Had such a clause been included in the present policy, there would be some justification for the defendant's contention but such was not the case.*

(Italics ours.) *Reese v. Northern Ins. Co., supra* at 24-25. Without further analysis, the court held that the insured was entitled to the replacement cost without rebuilding.

Analysis of the 2½-page *Reese* opinion and its subsequent history casts substantial doubt upon the validity of the statement in *National Fire Ins. Co. v. Solomon, supra* at 770, that: "The replacement cost method of payment does not require the rebuilding of the structure as a condition precedent to the payment of the proceeds under such policy." We disapprove of the statement as a general rule of interpretation of insurance policies. The first thing wrong with it is that it ignores the possibility of different provisions which may exist in other policies, as in this case. Second, the statement ignores all the substantial, well-reasoned authorities to the contrary. Third, the *Reese* case is not persuasive authority, but is the only authority cited.

The facts in *National Fire Ins. Co. v. Solomon*, 96 Wn.2d 763, 638 P.2d 1259 (1982) mandate limiting whatever its holdings may be to those facts and the policy involved. The case arose from the trial court's denial of the insurer's motion to enforce the appraisal provisions in the policy. Yet the court considered the merits. Relying on a *California statute*, the court held that actual cash value meant fair market value *without* depreciation. Another state's statutory definition should not control our interpretation.

Most significantly, *Solomon* simply does not apply or control in this case because the policy here specifically provides that the insurer will pay no more than actual cash value

unless actual repair or replacement is complete. This clause alone completely distinguishes *Solomon*.

We hold that the policy at issue is not ambiguous; its conditions plainly limit recovery to actual cash value under these facts.

The Court of Appeals is reversed. The matter is remanded to the trial court with directions to enter summary judgment in favor of the defendant.

ANDERSEN, C.J., and UTTER, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.