[627 NYS2d 185]

KAREN M. KUMAR, Appellant, v TRAVELERS INSURANCE COMPANY, Respondent, and JOSEPH A. KUMAR, Appellant.

Fourth Department, April 28, 1995

## APPEARANCES OF COUNSEL

*Schaus & Schaus,* Buffalo *(Richard M. Schaus* of counsel), for Karen M. Kumar, appellant.

*Timothy L. Burke,* Cheektowaga, for Joseph A. Kumar, appellant.

*Hurwitz & Fine, P. C.,* Buffalo *(James D. Gauthier* of counsel), for respondent.

## OPINION OF THE COURT

DENMAN, P. J.

This case presents an issue of first impression for appellate courts in New York regarding interpretation of the "Guaranteed Replacement Coverage" provisions of a multiperil homeowner's insurance policy. Specifically, the parties dispute the interpretation of the policy language that requires the insurer to pay the full cost to repair or replace a damaged dwelling with equivalent construction "on the same premises". The issue is whether that phrase requires replacement of the damaged dwelling on the same premises or whether it simply establishes the theoretical limit of liability of the insurer. We hold that the insured is not required to replace the damaged dwelling "on the same premises", but, for other reasons, affirm the order appealed from in favor of defendant insurer.

### I

The essential facts are not in dispute. On or about June 1, 1990, plaintiff Karen M. Kumar and defendant Joseph A. Kumar obtained a multiperil homeowner's insurance policy issued by defendant The Travelers Insurance Company (Travelers) insuring real and personal property at 8330 Clarence Center Road. Karen and Joseph later separated and were granted a judgment of divorce on February 4, 1991. On February 16, 1991, the property was damaged by fire. At the time of the fire, Karen was living in the house; Joseph was living in another house that he owned in Cheektowaga.

Travelers agreed to pay Karen and Joseph $123,000, the limit of liability of the policy, plus 5% of the policy limit for debris removal ($6,150), for a total of $129,150. Travelers

further agreed that, if the damaged dwelling was "repaired or replaced", it would make an additional payment of $23,308.11 (the holdback). That amount consists of the difference between the estimated replacement cost ($145,198.20) and the limit of liability ($123,000), plus $1,109.91 for additional debris removal.

Pursuant to a provision in their judgment of divorce, Karen and Joseph agreed to divide equally the proceeds from the sale of the house on Clarence Center Road. Thus, upon the settlement of the insurance claim, each received $61,500 as one-half share of the amount representing the limit of liability. Karen then purchased a house in Lancaster for $110,000 and requested that Travelers pay her share of the holdback. Travelers refused, taking the position that the limit of liability was $123,000 and, therefore, Karen's replacement cost of $110,000 did not exceed the liability limit.

Karen commenced this action seeking payment of her share of the holdback amount and joined Joseph as a necessary party under CPLR 1001 (a). Travelers answered and raised several affirmative defenses. First, Travelers contended that Karen did not replace the damaged dwelling "on the same premises" and thus was not entitled to the holdback amount. Travelers also contended that "the amount actually spent to repair or replace the damaged building has not exceeded the limit of liability under the policy". Joseph cross-claimed for his share of the holdback amount, asserting that he had replaced his interest in the insured dwelling by purchasing a replacement dwelling for $162,000.

Travelers moved for summary judgment dismissing the complaint and the cross claim, asserting that Karen was not entitled to the holdback amount because she did not replace or rebuild the damaged dwelling "on the same premises" and because she had not expended more than the limit of liability in replacing the damaged dwelling, and that Joseph's purchase of a new house did not constitute "replacement" because, at the time of the fire, he owned a residence in Cheektowaga. Supreme Court granted Travelers' motion for summary judgment dismissing the complaint and the cross claim.

## II

The parties agree that the relevant provisions of the policy are found in an endorsement entitled "GUARANTEED REPLACEMENT COVERAGE DWELLING AND OTHER BUILDING STRUCTURES".

That endorsement provides that Travelers will "pay the full cost to repair or replace the damaged dwelling or other building structures with equivalent construction on the same premises", without regard to the limit of liability. The endorsement further provides that, when the cost to repair or replace the damaged dwelling is more than $2,500, Travelers "will initially pay the smaller of" replacement cost less deduction for depreciation or the applicable limit of liability. The remaining amount of the settlement, "including any excess over the limit of liability", will be paid "when repair or replacement of the damaged building is completed".

Travelers contends that Karen is not entitled to the holdback amount because she did not repair or replace the damaged dwelling "on the same premises". Karen responds that that provision of the policy does not require replacement at the same site, but serves to establish only the theoretical cost to repair or replace the damaged dwelling with like kind and quality at the insured premises.

There is only one reported decision in New York construing that provision. In *Johnson v Colonial Penn Ins. Co.* (127 Misc 2d 749), Supreme Court concluded that a provision of a policy wherein the insurer agreed to pay the cost of repair or replacement as measured by " 'the replacement cost of that part of the building damaged for equivalent construction and use on the same premises' " was "really nothing more than a hypothetical measuring device" *(Johnson v Colonial Penn Ins. Co., supra,* at 750, 752). Numerous courts in other States have considered similar provisions and concluded that the requirement of repair or replacement "on the same premises" is, at best, ambiguous regarding whether replacement is required on the same premises or whether the provision serves as a hypothetical measuring device. In *Blanchette v York Mut. Ins. Co.* (455 A2d 426 [Me]), the Supreme Judicial Court of Maine interpreted the provision as limiting calculation of replacement cost as one measure of damages. Similarly, in *Huggins v Hanover Ins. Co.* (423 So 2d 147 [Ala]), the Supreme Court of Alabama held that the purchase of a house at a different location constituted replacement under the terms of the policy. Other courts have refused to accept the interpretation urged by Travelers *(see, e.g., Conway v Farmers Home Mut. Ins. Co.,* 26 Cal App 4th 1185, 31 Cal Rptr 2d 883; *S & S Tobacco & Candy Co. v Greater N. Y. Mut. Ins. Co.,* 224 Conn 313, 617 A2d 1388; *Hess v North Pac. Ins. Co.,* 122 Wash 2d 180, 859 P2d 586). In fact, no court construing the same or a

similar provision has accepted the interpretation urged by Travelers.

Thus, we conclude that Travelers' agreement to pay the full cost to repair or replace the damaged dwelling with equivalent construction on the same premises merely establishes the limits of coverage and that replacement cost under the "GUAR-ANTEED REPLACEMENT COVERAGE" provision is measured by what it would cost to replace the damaged structure on the same premises. The insured is not required, however, to replace the damaged dwelling on the same premises in order to recover replacement cost.

## III

Although we agree that Karen's purchase of a house in Lancaster constitutes replacement of the damaged dwelling pursuant to the policy, we conclude that Karen and Joseph are not entitled to the holdback amount because the replacement cost did not exceed the limit of liability. Karen and Joseph concede in their respective briefs that the holdback amount could not be recovered until more than the $123,000 limit of liability had been spent. We reject the contention of Karen that, because her purchase of a house for $110,000 constituted an expenditure greater than her share of the recovery, she is entitled to one half the holdback. The fact that Karen and Joseph agreed to divide equally the $123,000 is of no consequence to the insurer. Travelers cannot be bound by the terms of the judgment of divorce. Moreover, Travelers' concern is the actual cost of replacing the damaged dwelling compared to the limit of liability, not a comparison of an insured's share of the limit of liability compared to the cost of replacement.

Joseph contends that "[t]o demand that the insureds must combine their shares of the insurance proceeds in order to replace the dwelling on the same premises would be for an insurance company to require a particular marital status for insureds". That argument is without merit. Travelers is not requiring the insureds to combine their shares of the insurance proceeds and is not concerned with the marital status of the insureds, but only with the repair or replacement of the insured dwelling.

Finally, we reject the contention of Joseph that he is entitled to his share of the holdback because he has spent more than the limit of liability in replacing the damaged

dwelling. There is no support for an interpretation of the policy that would allow the insureds to replace one dwelling with two. Joseph did not replace the insured dwelling by purchasing a house for $162,000 because he was already living at another house that he owned at the time the insured dwelling was damaged. The sale by Joseph of that house and the purchase of a "replacement" dwelling does not constitute replacement according to the terms of the policy.

Accordingly, the order dismissing the complaint and cross claim should be affirmed.

LAWTON, WESLEY, BALIO and DAVIS, JJ., concur.

Order unanimously affirmed, without costs.