781 So.2d 1143 (2001)
Bobbie Ruth DAVIS, Appellant,
v.
ALLSTATE INSURANCE CO., Appellee.
No. 3D99-1490.
District Court of Appeal of Florida, Third District.
March 7, 2001.
Rehearing Denied April 25, 2001.
*1144 Adolfo Del Castillo, Miami, for appellant.
Angones, Hunter, McClure, Lynch & Williams, and Christopher J. Lynch, Miami, for appellee.
Before JORGENSON, COPE, and RAMIREZ, JJ.
RAMIREZ, J.
Bobbie Ruth Davis appeals the denial of her Motion for Directed Verdict following a jury verdict in favor of Allstate Insurance Company. We affirm.
In May, 1992, Davis purchased a Deluxe Homeowners Policy from Allstate which contained a replacement cost guarantee provision. On her application, she valued her home at $65,000.00. On August 24, 1992, Hurricane Andrew severely damaged Davis' home. Allstate estimated the cost to replace or repair her damaged home at $75,564.75. In 1994, Davis purchased a new home for $154,000.00 and sold her unrepaired home for $31,000.00. The replacement home was newly constructed, and had four bedrooms, three baths, swimming pool, patio, whirlpool tub, tile floors, intercom and alarm system. The damaged home was built in 1951, and had three bedrooms, two baths, and wood floors. Davis deducted the estimated cost of the extra amenities in the new home and the salvage value of her old home from the purchase price of the new home, and then claimed an actual replacement cost of $94,000.00. Allstate declined to pay any amount greater than the $75,564.75 paid to replace or repair the damaged home.
Davis brought an action to recover the difference between the amount Allstate paid and what she considered to be her actual replacement cost. The jury returned a verdict in favor of Allstate, finding that Davis had been reimbursed completely for the amount actually and necessarily spent to replace her damaged home.
Davis' policy stated that "replacement cost" meant there would be no "deduction for depreciation" and that "[p]ayment [would] not exceed the smallest of the following amounts: 1) the replacement cost of that part of the building structure damaged for equivalent construction and use on the same premises; 2) the amount actually and necessarily spent to repair or replace the damaged building structure; or 3) the limit of liability applicable to the building structure." Davis argues that the replacement cost is what she actually spent after reducing the purchase price of the replacement home by the salvage value of her damaged home and the value of the extra amenities in the new home. We disagree.
"[R]eplacement cost under the `Guaranteed Replacement Coverage' provision is measured by what it would cost to replace the damaged structure on the same premises." Kumar v. Travelers Ins. Co., 211 A.D.2d 128, 627 N.Y.S.2d 185, 187 (1995). "[W]hen the insured desires to rebuild either a different structure or on different premises ... the company's liability is not to exceed what it would have *1145 cost to replace an identical structure to the one lost on the same premises." Conway v. Farmers Home Mut. Ins. Co., 26 Cal. App.4th 1185, 31 Cal.Rptr.2d 883, 885 (1994). "Although liability is limited to rebuilding costs on the same site, the insured may then take that amount and build a structure on another site, or use the proceeds to buy an existing structure as the replacement, but paying any additional amount from his or her own funds." Hess v. North Pacific Ins. Co., 122 Wash.2d 180, 859 P.2d 586, 588 (1993).
We agree with the courts in Kumar, Conway, and Hess, supra. The amount owed by the insurance company toward the purchase of a different home is measured by the amount necessary to repair damage to the insured property or to replace items that cannot be repaired. The insured should pay for any costs in excess of that amount.
Affirmed.