65 P.3d 1234 (2003)
Thomas and Karen DePHELPS, Petitioners,
v.
SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation, Respondent,
State Farm Fire & Casualty Company, an Illinois Corporation; Belfor Usa Group, Inc., a Colorado Corporation registered and doing business in Washington; Belfor Construction Services, Inc., formerly a Washington corporation, doing business as Bridgeway Construction Co., Inc.; Bridgeway Construction Co., Inc., formerly a Washington corporation; and Sound Builders, a Washington Corporation, Defendants.
No. 21029-4-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 8, 2003.
*1235 Lincoln Dennis Sieler, Seattle, WA, for Appellant.
Thomas Lether, Clarke, Bovington, Cole, Miller & Lether, Seattle, WA, for Respondent.
*1236 SWEENEY, J.
This is a dispute over the coverage afforded by a homeowners' insurance policy. The policy insures a dwelling used principally as a private residence. But the policy also refers to and covers various aspects of room rentals. We conclude from our reading of the whole policy that it covers the insureds' use of this residence as a bed and breakfast. And we reverse the trial court's decision to the contrary.

FACTS
Thomas and Karen DePhelps owned a residence in Ronald, Washington. The property was zoned general commercial and had five bedrooms, three full baths, four half baths, one great hall, and two kitchens, one of which was industrial. The DePhelpses rented rooms on a bed and breakfast basis. They also rented the great hall occasionally for weddings and similar events. Safeco Insurance Company of America sold them a homeowners' policy.
In late March 1997, heavy accumulations of snow and ice shifted and slid. This loosened part of the metal roof. Mr. DePhelps fixed it himself. He then realized the damage was more extensive than he had originally estimated. So in December 1997, he reported the damage to his insurance carrier, Safeco, and submitted a claim. Mr. DePhelps submitted a contractor's estimate of $40,000 to repair the roof.
In August 1998, Safeco inspected the damage and approved the estimate. And it paid $28,432 for the repairs in November 1998. But additional damage appeared. Mr. DePhelps and Safeco argued over the extent of that damage. Safeco paid an additional $49,163 in August 1999.
Meanwhile, the roof still leaked. The DePhelpses' contractor, Bridgeway Construction Company, temporarily repaired it. And Safeco paid for those temporary repairs. Safeco paid another contractor $7,000 to repair Bridgeway's defective work in April 2000. Additional water damage resulted from this defective temporary repair.
In December 1999, the home and its contents were found to be contaminated by toxic mold caused by water leaks resulting from the defective repairs. In January 2000, the DePhelpses moved out of the house and submitted more claims for mold damage and loss of use.
Kittitas County required a permit to proceed with the repairs. And because of the commercial zoning, the county classified the property as a hotel. This meant that repairs had to conform to the 1997 commercial building code, including the Americans with Disabilities Act access.
The DePhelpses submitted a repair claim for $1,724,650. They claimed the policy's code upgrade provisions entitled them to upgrades both for the repairs and the additional commercial code elements required by the county to restore the structure to its preloss use. Safeco estimated the repair costs at over $600,000 and paid $536,446.86.
The DePhelpses sued for breach of contract, bad faith, and Consumer Protection Act violations. Both sides moved for partial summary judgment on the coverage issues.
The DePhelpses alleged that the plain language of the policy entitled them to:
 all code required upgrades to restore the facility to its former use;
 the rental value of each room they held out for rental, including the great hall, every day for 12 months; and
 a cash value that reflected the commercial zoning and income potential.
Safeco argued that the policy language must be read in the context of a homeowners' policy for a structure used principally as a residence. And as such the policy should be construed to provide for no more than:
 residential code upgrades;
 loss of use of the rental value of the premises as a single family residence; and
 replacement or cash value as a residence.
The trial court agreed with Safeco and limited Safeco's obligations to losses associated with a private residence, not a bed and breakfast.
We granted discretionary review.

*1237 DISCUSSION
STANDARD OF REVIEW
Interpretation of an insurance policy is a question of law that we review de novo. Torgerson v. N. Pac. Ins. Co., 109 Wash.App. 131, 137, 34 P.3d 830 (2001). We construe the entire contract, and try to give force and effect to each clause. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997). Exclusions defeating coverage are narrowly construed. Vadheim v. Continental Ins. Co., 107 Wash.2d 836, 841, 734 P.2d 17 (1987); Dairyland Ins. Co. v. Ward, 83 Wash.2d 353, 358, 517 P.2d 966 (1974).
UMBRELLA ISSUE
The overarching issue here is whether this policy covered the rental of parts of this building. And we conclude that it did.
Safeco is correct that the policy defines the "insured location" as a residence premises including a one, two, three, or four family dwelling used principally as a private residence. Clerk's Papers (CP) at 75 (Policy Definitions (12)(a)). Safeco is also correct that the contract defines "Building Property We Cover" as "the dwelling on the residence premises ... used principally as a private residence. "CP at 76 (Coverage ADwelling (1)) (emphasis added).
But the policy also contains the following terms and conditions:
 Under the definition of "bodily injury," personal injury coverage does not include injury arising out of the business pursuits of an insured. CP at 74 (Policy Definitions (2)(b)(4)).
 Covered personal property includes $2,500 worth of business property. CP at 78 (Coverage CPersonal Property (3)(i)).
 Not covered is personal property of roomers, boarders, and other tenants not related to any insured, or property in an apartment regularly rented to others by the insured. But coverage is extended to property belonging to an insured that is in a sleeping room rented to others by an insured. CP at 78 (Coverage C Personal Property We Do Not Cover (6), (7)).
 If a covered loss "makes that part of the residence premises you rent to others or hold for rental uninhabitable, we cover: Fair Rental Value, meaning the fair rental value of that part of the residence premises you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable." CP at 80 (Coverage DLoss of Use (2)) (emphasis added).
 The policy does not cover medical payments to others for personal injury "arising out of business pursuits of an insured or the rental or holding for rental of any part of the premises by an insured." CP at 85 (Coverage FLiability Losses We Do Not Cover (1)(b)) (emphasis added).
This policy, then, anticipates that rooms will be rented out and defines the limits of Safeco's liability in the event they are. Nothing in this policy suggests that the presence of renters limits Safeco's liability for structural damagethe coverage at issue here. The policy does not distinguish between "business pursuits" and "rental or holding for rental." And this is consistent with the purpose of business use exclusions in homeowners policies. When the use of the insured premises changes from residential to commercial, the risk of certain types of claims increases significantly because of the increased public traffic. And an insurer should not be expected to underwrite these additional risks without additional compensation. The insured must purchase the appropriate coverage. Nationwide Mut. Fire Ins. Co. v. Nunn, 114 N.C.App. 604, 609, 442 S.E.2d 340 (1994). But here the risk of the roof falling in was not increased by the occupants' having paid for their beds.
The policy here, then, accommodates the DePhelpses' use of the property as a bed and breakfast.
SAFECO'S LIABILITY FOR THE CODE UPGRADES
The DePhelpses argue that the plain language obligates Safeco to pay for any code required upgrades. Safeco responds that, because this policy is intended to cover residential *1238 loss only, the coverage is implicitly restricted to residential code upgrades.
We give this insurance contract a "`practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties.'" Philadelphia Fire & Marine Ins. Co. v. City of Grandview, 42 Wash.2d 357, 363, 255 P.2d 540 (1953) (quoting trial judge's memorandum opinion). We avoid strained constructions. Id.
Once the insured makes a prima facie showing that the loss falls within the scope of the policy, the burden is on the insurer to prove that the claimed loss is excluded by specific policy language. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992).
Snow and ice damage is certainly a covered peril here. And the cost of repairing damage caused by this peril is a covered loss. Safeco contends that the DePhelpses had the burden to prove that costs associated with "commercial upgrades" are not excluded. But this would effectively shift the burden to the DePhelpses. And it is Safeco's burden to show that the loss is excluded under this policy.
Code upgrades are covered by this contract:
 Safeco covers "the replacement cost of that part of the damaged building for equivalent construction and use ... as determined shortly following the loss." CP at 82 (Section IProperty Conditions (5)(a)(1)(b)) (emphasis added).
 "Building Ordinance or Law Coverage. Damage to Building Property We Cover... caused by Building Losses We Cover ... will be settled on the basis of any ordinance or law that regulates the construction, repair or demolition of this property." CP at 81 (Coverage DAdditional Property Coverages (7)) (emphasis added).
An insured can reasonably expect replacements to comply with current building laws. Starczewski v. Unigard Ins. Group, 61 Wash.App. 267, 274, 810 P.2d 58 (1991). And the costs of current building code compliance are also recoverable under the "efficient proximate cause" rule. That rule obligates an insurer to pay for those costs that are proximately caused by the insured event. Id.
Safeco contends that the "equivalent construction and use" language of the DePhelps policy precludes recovery for building code upgrades here. In several decisions, Washington courts have declined to apply Starczewski to policies that contain "equivalent construction and use" language, such as that contained in the DePhelps policy. See, e.g., Dombrosky v. Farmers Ins. Co. of Wash., 84 Wash.App. 245, 258, 928 P.2d 1127 (1996); Roberts v. Allied Group Ins. Co., 79 Wash. App. 323, 325-26, 901 P.2d 317 (1995).
But those cases are distinguishable. Unlike the policies in Starczewski, Dombrosky, and Roberts, the DePhelps policy expressly covers the cost of compliance with ordinances and building laws. Safeco is required to cover code upgrade costs to restore the structure to its former use as a bed and breakfast. The extent of the required upgrades is disputed. The amount of Safeco's liability is then a question for the trier of fact. Leber v. Smith, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994). But by the terms of the policy, replacement costs include code upgrades required by the county to repair and replace the covered damage so as to restore the premises to its former use. This includes the renting of rooms.
Finally, the policy's guaranteed replacement coverage requires the insured to accept yearly adjustments reflecting Safeco's determination of "changes in the cost of construction for the area." CP at 82 (Section I Property Conditions (5)(a)(2)(b)) (emphasis added). This suggests that, as is usual in the insurance industry, Safeco assumed the responsibility to stay current with changing building codes affecting the relative risk and to set premiums accordingly.
LOSS OF USESCOPE
Despite the plain language of the policy, Safeco insists that the rental rooms here are not covered. Safeco postulates two categories of room rentalone covered and one not covered. The kind it contends was contemplated by this policy is a sort of "private" *1239 renting or holding out for rent, as compared to a "commercial" renting or holding out for rent. Safeco contends that the policy contains a general grant of coverage which controls the entire policycoverage for a residential premises. And it argues that the DePhelpses converted the residential structure into a commercial structure by renting rooms as a bed and breakfast.
To the extent the policy contains inconsistent or conflicting terms, the conflict must be resolved in favor of the insured. Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., 134 Wash.2d 413, 951 P.2d 250 (1998). We find no distinction between residential and commercial "renting or holding out for rent" of sleeping rooms in this policy, reading the policy as a whole. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997). Nor do we find any such distinction in relevant case law or the governing statutes in this state.
Moreover, we see no logical reason why renting rooms to the public, i.e., running a bed and breakfast, should eliminate coverage for structural damage. Safeco compares renting sleeping rooms to operating a factory. But they are not comparable. Running a manufacturing facility or a commercial restaurant no doubt increases the risk of physical damage to the structure from fire, explosion, toxic pollution, and so forth. But sleeping in the rooms, whether by the family or paying guests, does not increase Safeco's risk under the policy's building loss provisions.
LOSS OF USE
The DePhelpses argue that they are entitled to the full amount that they could have rented the house for because the policy is not limited to actual lost income. The policy language says fair rental value of that part of the premises that is either rented to others or held out for rental. Safeco again responds that the policy term "residence premises" controls. And therefore the loss of use is limited to the fair rental value of the premises as a single family residence.
A lost rents provision in an insurance contract is generally construed as one of indemnification only. It indemnifies the insured against actual losses. Chronicle Bldg. Co. v. N.H. Fire Ins. Co., 21 Ga.App. 687, 94 S.E. 1043, 1044 (1918). A claim of loss of use must therefore be documented.
Related judicial decisions on lost rents and loss of use support the notion that hypothetical losses are not recoverable:
 In a tort action, loss of income is recoverable "`if the proof is adequate.'" Straka Trucking, Inc. v. Estate of Peterson, 98 Wash.App. 209, 211-12, 989 P.2d 1181 (1999) (quoting DAN B. DOBBS, LAW OF REMEDIES § 5.15(2), at 876 (2d ed.1993)).
 Proof of lost profits, income, or business may be considered as evidence of the value of the loss of use in an action for damages. King Logging Co. v. Scalzo, 16 Wash.App. 918, 928, 561 P.2d 206 (1977).
 A claim of loss of use of a car was insufficient to sustain an award of damages absent any proof of the value of such use per day or week, or the cost to rent another car for the same uses during the same time. Norris v. Hadfield, 124 Wash. 198, 203, 213 P. 934 (1923), 124 Wash. 198, 216 P. 846 (1923).
 In determining the value of land for condemnation proceedings, the court refused to consider evidence of possible profits of a hypothetical business that might have been carried on. City of Tacoma v. Nisqually Power Co., 57 Wash. 420, 434, 107 P. 199 (1910).
The DePhelps policy provides that, in the event of a claim, the insured must provide "records supporting the fair rental value loss." CP at 82 (Section IProperty Conditions (3)(f)(7)). The policy, then, restricts recovery for lost rent to the actual loss.
Safeco contends the DePhelpses are entitled to no recovery for the lost rental income. It would restrict loss of use to the rental value of the lodge as a single family home. But the policy contains separate loss of use provisions: one for the loss of the insureds' own housing and another for lost rental income. Again, as we read these provisions, the DePhelpses may recover the rental value of the home as a single family rental. Or they can recover the reasonable cost of *1240 equivalent housing for themselves (as reduced by the rental activity) plus an estimate of the amount they would have earned from the rented portions.
All of this is, again, a question of fact. Barci v. Intalco Aluminum Corp., 11 Wash. App. 342, 352-53, 522 P.2d 1159 (1974). The loss of rental income is, however, covered.
ACTUAL CASH VALUERESIDENCE OR BED AND BREAKFAST
When the loss is total, the policy defines actual cash value as "the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market." CP at 74 (Policy Definitions (1)(b)).
Like loss of use, actual cash value clauses provide indemnity only. Hess v. N. Pac. Ins. Co., 122 Wash.2d 180, 182-83, 859 P.2d 586 (1993). The replacement cost considerationssuch as building code upgradesdo not, therefore, apply. Replacement value applies only if actual replacement is undertaken. Id. at 187, 859 P.2d 586. The parties here agree on this point.
The fair market value is that which an informed buyer would willingly pay and an informed seller would accept. State v. Rowley, 74 Wash.2d 328, 334, 444 P.2d 695 (1968).
The actual cash value is a question of fact. Id. The trier of fact determines fair cash market value, taking into consideration any and all uses to which the property was then adaptable. Id. All elements possibly affecting the value may be considered. In re Estate of Eggert, 82 Wash.2d 332, 335, 510 P.2d 645 (1973).
The determination of market value of the destroyed property will depend on whether it was saleable as a bed and breakfast when the damage occurred. This in turn depends upon whether it was in compliance with the then existing building codes for that purpose, and whether that code compliance would pass to a buyeror whether the county could or would require upgrades as a condition of sale (as well as for reconstruction).
But, in any event, the cash value applies to the property as it stood at the time of loss. Replacement costs, including code upgrades, are not included. Hess, 122 Wash.2d at 187, 859 P.2d 586. The market value at the point of loss is, again, a question of fact.
ATTORNEY FEES
The DePhelpses claim attorney fees as prevailing party. Safeco contends they did not ask for fees below, therefore they are precluded by RAP 2.5(a) from requesting them on appeal.
The DePhelpses requested attorney fees in their complaint. They lost in the trial court so it would have been pointless to ask for fees. They prevailed here, however, and are therefore entitled to fees. Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 143, 26 P.3d 910 (2001); Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 52, 811 P.2d 673 (1991).
On remand, the trial court should award the DePhelpses fees to the extent to which their recovery is attributable to the action.

CONCLUSION
We reverse the judgment of the trial court. If the DePhelpses elect to take cash value, to the extent the subject property was functional as a bed and breakfasti.e., code compliantat the time of the loss, the cash value of the building as a bed and breakfast with commercial zoning is recoverable. If the DePhelpses elect to repair and replace the structure, the building code upgrades are recoverable as necessary to restore the structure to its former use.
WE CONCUR: BROWN, C.J., and KURTZ, J.